UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LUZ VENEDICTO,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, acting<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:21-cv-00851-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 14, 19)** |

## I.  Introduction

Plaintiff Norma Luz Venedicto ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 15, 19.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

## II.  Factual and Procedural Background[2]

On July 19, 2017 Plaintiff applied for disability insurance benefits alleging a disability onset date of October 18, 2013 due to the following impairments: brain damage; neck problems, nerve damage, carpal tunnel; pain in her arms, shoulders, elbows, wrists, and fingers; slipped and bulging discs of her cervical, thoracic, and lumbar spine; sciatica and nerve damage on her right and left side; lower extremity nerve damage; left and right knee first and third meniscal damage; neuropathy, diabetes types 1 and 2, pancreas damage, and verities; cyst on kidney, fatty liver disease, and cyst on her head; bipolar disorder, manic depression, post-traumatic stress disorder,

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 and 21.
[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

and schizophrenia; anger issues, panic anxiety, and paranoia; hearing loss; fibromyalgia; lupus; rheumatoid arthritis; neuropathy in her left foot; stuttering; and emotional problems. AR 948. The Commissioner denied the application initially on November 17, 2017 and on reconsideration on May 7, 2018. An initial and supplemental hearing were held before an Administrative Law Judge (the "ALJ") on October 22, 2019 and July 23, 2020, respectively. AR 161–98; 87–128. Plaintiff had no representative at either hearing. *Id.* On August 3, 2020 the ALJ issued a decision denying Plaintiff's application. AR 60–79. The Appeals Council denied review on March 25, 2021. AR 1–7. On May 25, 2021 Plaintiff filed a complaint in this Court. Doc. 1.

### III.    The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §

1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of October 18, 2013.  AR 63.  At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral carpal tunnel; polyneuropathy; fibromyalgia; bilateral hand degenerative joint disease; obesity; diabetes; degenerative disc disease of the cervical and lumbar spines with radiculopathy; left knee meniscus degeneration; chronic pain syndrome; anxiety disorder; and posttraumatic stress disorder.  AR 64.  The ALJ also determined at step two that Plaintiff had the following non-severe impairments: tendinitis of elbows and

shoulders with cervical myofascial syndrome; right wrist subchondral cyst; left wrist negative ulnar variance without evidence of osteonecrosis; left foot dorsal and plantar enthesophytes and spurring and mild bursitis; lateral epicondylitis of elbow with injections; decreased vision requiring glasses; small hiatal hernia incidentally noted on imaging; right knee slight irregularity of the meniscus; hepatomegaly, steatosis, cholecystectomy; benign lymph node; asthma in smoker with prescribed inhaler; elevated bloodwork findings such as cholesterol; headache, other speech disturbance, other amnesia, other abnormal involuntary movements all based on self-report and not objective medical findings.  AR 64–65.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 65–67.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: never climb ladders/ropes/scaffolds; occasionally stoop, crouch, and climb ramps/stairs; occasionally overhead reach bilaterally; frequent gross and fine manipulation bilaterally; must avoid concentrated exposure to fumes, odors, dusts gases and extreme heat or cold; simple, non-tandem tasks; occasional direct interaction with the general public; ability to change from standing to seated or vice versa for up to two minutes every two hours without interference with work product; use a cane for ambulation on uneven surfaces; and the claimant is limited to frequent fine fingering bilaterally.  AR 67–77.

At step four the ALJ concluded that Plaintiff could not perform her past relevant work as a case worker.  AR 77.  At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: marker, housekeeper cleaner, and routing clerk.  AR 78.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of October 18, 2013 through her date last insured of December 31, 2018.  AR 79.

## V.   Issues Presented

Plaintiff asserts four claims of error: 1) the ALJ failed to properly evaluate the medical opinions and to properly determine Plaintiff's residual functional capacity; 2) remand is required to consider new evidence before the Appeals Council; 3) the ALJ relied on a flawed hypothetical question to the vocational expert; and, 4) the ALJ failed to properly evaluate Plaintiff's testimony.

### A.   The Medical Opinions and RFC

#### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

## 2.    Analysis

Plaintiff's treating internist, Dr. Ali, completed a medical opinion dated July 17, 2017. AR 1401. Dr. Ali opined Plaintiff was unable to lift/carry more than 2 pounds, sit or stand more than 20 minutes, unable to reach overhead, unable to effectively grasp, push, pull or finely manipulate with hands, unable to walk more than 1/8 of block, and unable to stoop, kneel, crawl, climb, or balance. She could not do even a sedentary job. AR 1404–05.

The ALJ noted that Dr. Ali somewhat explained his opinion and the opinion is supported by a number of findings on exam such as decreased strength and range of motion, but that the opinion as to her functionality was otherwise not persuasive, explaining as follows:

> However, the undersigned is not persuaded by this opinion because it is inconsistent with the overall record that shows minimal and conservative treatment for these conditions for many years. The opinion is further inconsistent with the other exam findings of record that show the claimant has intact strength. There is no evidence the doctor had the opportunity to review the entire record to form a more comprehensive opinion. Further, the opinion is not very persuasive because a specialist in neurology thought many of the claimant's complaints were psychosomatic.

AR 76.

Plaintiff disputes the ALJ's finding that her care was conservative. Plaintiff cites the Ninth Circuit's opinion in *Garrison* and an unpublished EDNY opinion in *Diaz*. Neither opinion is entirely applicable here. Plaintiff's explanatory parenthetical following the *Garrison* citation reads "expressing doubt that steroid injections, which have potential severe side-effects, are

6

'conservative' treatment."  Br. at 27 (citing *See Garrison v. Colvin*, 759 F.3d 995, 1015 n. 20 (9th Cir. 2014)).  Although it did not purport to be a direct quote, the parenthetical is misleading in that it suggests that the *Garrison* court noted the potentially severe side-effects of steroid injections, when in fact that idea came from Plaintiff alone.  The *Garrison* opinion discussed side effects of the claimant's other treatments, not her injections:

> Turning to the epidural shots, Wang and Feldman's records make clear that epidural shots never provided Garrison any relief for her neck pain, and that they relieved Garrison's back pain for only variable, brief periods of time, ranging from a couple of months to a few days. *The other treatments* prescribed by Wang, including pain pills, *caused side effects* including intense sleepiness and drowsiness and, even when taken several times per day, provided only limited periods of relief from the otherwise-constant pain.

*Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (emphasis added).

Moreover, the injections in question in *Garrison* were spinal epidural injections.  *Id.*  Here, by contrast, Plaintiff cites one instance where she received cortisone injections into her elbows.  Br. at 11 (citing AR 1218).  The numerous other cited injections were injections of Toradol (a non-steroidal anti-inflammatory), anesthetic based medial branch blocks, or were non-specifically cited as "pain injections."  Br. at 10 (citing AR 612, 1291, 1321, 1338, 1340, 1395).

In *Diaz¸* the cortisone injections were characterized as "frequent."  *See Diaz v. Astrue*, No. 08-CV-5006 (JG), 2009 WL 2601316 *5 (E.D.N.Y. Aug. 24, 2009) (Gleeson, J.) ("it seems odd to characterize [Plaintiff's] treatment regime as conservative in light of the fact that it involved *frequent* use of corticosteroids, a medication with potentially severe side effects.") (emphasis added).  Consistent with the court's observation in *Diaz*, the Mayo clinic states that "[p]otential side effects of cortisone shots increase with larger doses and repeated use," that "[t]here's concern that repeated cortisone shots might damage the cartilage within a joint," and that "doctors typically limit the number of cortisone shots into a joint."[3] Again, Plaintiff cites but one cortisone injection

---

[3] https://www.mayoclinic.org/tests-procedures/cortisone-shots/about/pac-20384794

into her elbows, not repeated cortisone injections.

Next, Plaintiff cites Judge Posner's comment in *Carradine*, noting the improbability that Plaintiff is "a good enough [actor] to fool a host of doctors…into thinking [he] suffers extreme pain; and…that this host of medical workers would prescribe drugs and other treatment for [him] if they thought [he] were faking [his] symptoms." *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).   Plaintiff then notes that Judge Posner's comment is particularly salient today in light of the opioid crisis.  Although the discussion is rhetorically persuasive, it is not clear how it applies.  Plaintiff is disputing the ALJ's finding that she was treated conservatively.  That finding does not suggest the ALJ thought Plaintiff fooled her doctors into prescribing her medication.  To the contrary, it suggests her doctors prescribed appropriate but conservative treatment commensurate with her non-disabling impairments.

To the extent she is suggesting that her prescriptions for Norco (an opioid based pain killer) is not a conservative treatment measure, the point is reasonably well taken insofar as opioids are powerful drugs with addictive potential which should be reserved for severe pain.  The fact that opioids have been notoriously overprescribed, however, arguably cuts the opposite way insofar as it suggests many physicians regarded opioids as a conservative treatment measure to be handed out even in the absence of debilitating pain.

Plaintiff further notes that "not all chronic pain cases are amenable to surgery and certainly fibromyalgia, one of Plaintiff's diagnoses, is not treated with surgery", nor was surgery recommended by her providers for any impairment.  Br. at 28.  Plaintiff's critique presupposes that "conservative treatment" as used by the ALJ here was synonymous with "non-surgical treatment."  The argument is not persuasive.  Despite her contention that steroid injections are non-conservative, she cites only one example of a steroid injection in her elbows notwithstanding her myriad other impairments.  Though not a sufficient standalone basis to reject a medical opinion, it was not

patently unreasonable for the ALJ to characterize Plaintiff's treatment as conservative where it consisted of physical therapy, pain medication, non-steroidal injections, and one steroid injection in her elbows.

Plaintiff also disputes the ALJ's finding that Dr. Ali's opinion was entitled to comparatively less weight due to his lack of access to subsequent medical records within the relevant period. The point is well taken as that is similarly characteristic of other opinions in the record. Further, his opinion dated July of 2017 was toward the end of the relevant period spanning 2013 through 2018.

Plaintiff's discussion is, on balance, at a rather high degree of generality. Supportability and consistency with the record are the paramount considerations, and that discussion typically centers around objective medical findings. However, Plaintiff offers little to no discussion of which objective examination or diagnostic findings support what limitations related to which impairments, and how Dr. Ali's opinion fits in.

Specifically, the ALJ found Dr. Ali's objective findings concerning strength were unsupported by the record, a finding which Plaintiff does not dispute. Dr. Ali identified the following pertinent examination findings: 1) hands: moderate to severe thenar and hypothenar muscle wasting of left and right hands with grip strength 2/5 on the right and 3/5 on the left; 2) cervical spine: moderately severe edema and tenderness of cervical and paracervical muscles, severe paraspinal spasm on range of motion, 3/5 upper extremity power, reduced range of motion on flexion, extension, and lateral rotation; 3) thoracic and lumbar: moderate spasm on range of motion, 3/5 lower extremity power; severe instability on heel to toe walk; approximately 50% reduced ROM on flexion, extension, and lateral bending. AR 1403.

Dr. Ali identified associated objective testing which at least somewhat substantiate the identified examination deficiencies, including: 1) abnormal lower extremity nerve conduction study (NCS) showing diffuse polyneuropathy; 2) abnormal electromyography (EMG) showing chronic

9

active l5/S1 radiculopathy; 3) NCS suggestive of carpal tunnel; 4) EMG showing chronic active C5/6 radiculopathy, and; 5) mild degenerative changes of cervical and lumbar spine.  AR 1403.

The ALJ stated the opinion was "inconsistent with the other exam findings of record that show the claimant has intact strength."  AR 76.  Consistent with that characterization, the ALJ noted mildly decreased strength in Plaintiff's leg muscles in October 2016.  A review of the same record reveals motor strength findings between 4/5 and 5/5, which undermines Dr. Ali's finding of 3/5 lower extremity power.  AR 1226.

The ALJ also noted a May 2018 full neurological examination noting normal bulk, tone and strength in all four extremities, poor effort with the right upper extremity, normal gate, and that the neurologist believed Plaintiff's symptoms were mostly psychosomatic.  AR 72.  The lack of remarkable findings on exam undermines Dr. Ali's findings.  AR 1631-33.

The ALJ also cited a late 2018 examination noting upper trapezius and cervical muscle tenderness, but 5/5 upper extremity strength and 10 percent decreased cervical range of motion. AR 1493.  This undermined Dr. Ali's findings concerning upper extremity strength deficits and 40 to 50 percent reduction in cervical range of motion.

Finally the ALJ cited the consultative examination noting some decreased range of motion and mildly decreased strength in some muscles.  AR 1645–46.  As to grip strength, the examiner noted 4+/5 strength on the right and 5/5 on the left.  AR 1646.  These findings contradict Dr. Ali's findings on the same subjects, including 2/5 and 3/5 grip strength in either hand.  Notably, the consultative examination is dated December 12, 2019, outside the relevant period given Plaintiff's last insured date was December 31, 2018.  Nevertheless, a significant recovery of grip strength between Dr. Ali's examination in July 2017 and the consultative examination in December 2019 is not plausible absent any substantial intervening treatment, of which there appears to be none.  The two findings are inconsistent.

The ALJ reasonably found Dr. Ali's findings unsupported by the record which contained countervailing findings.  Where the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

Plaintiff further disputes the ALJ's reliance on the non-examining opinions insofar as they lacked a complete view of the record, and that such opinions are not a standalone basis in support of an RFC.  However, an RFC determination is not simply a battle of competing opinions.  The RFC need not mirror any particular opinion, it is an assessment formulated by the ALJ based on all relevant evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3).  The argument hearkens back to the now-defunct treating physician rule.  It has little practical value.  A better approach would underscore the specific examination or diagnostic findings that support Dr. Ali's identified functional limitations, address the countervailing examples identified by the ALJ, and explain why a complete view of the record requires changes to the RFC.

For example, despite no examination findings precisely commensurate with Dr. Ali's finding of 3/5 lower extremity strength, one could argue that the other examinations cited by the ALJ did generally note at least some degree of strength reductions, that such strength reduction is consistent with abnormal lower extremity EMGs and lumbar spinal pathology, and that a more significant standing and walking limitation was therefore warranted than what the ALJ included in the RFC here (2 minute position changes every 2 hours and cane use on uneven terrain), even if Dr. Ali's extreme limitations were not necessarily warranted (stand 20 minutes maximum and walk 1/8 of a block maximum).[4]

Plaintiff offers no argument that proceeds in this fashion.  Rather, Plaintiff's discussion

---

[4] Though such an argument would run into the proposition set forth above in *Jamerson* that the ALJ's conclusion controls where the evidence reasonably supports two conclusions.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

11

suggests she believes Dr. Ali's rather extreme opinion was supported by the objective evidence in every respect, that the RFC was unsupported in every respect, and that remand is therefore required.

Plaintiff also contends the ALJ's mental RFC formulation erroneously limited her to simple, non-tandem tasks with occasional direct interactions with the general public, whereas the non-examining psychiatrist Dr. Solomon also opined she was limited to understanding and remembering one to two step tasks and having no public contact, an opinion upon which the ALJ purported to rely.  Br. at 31 (citing AR 806-807).

Plaintiff contends the one-step command limitation would be dispositive here if incorporated into the RFC insofar as it would limit her to jobs with a reasoning level of R1, while the jobs identified by the VE all had a reasoning level of R2 except for housekeeper cleaner, which Plaintiff contends was not sufficiently numerous to qualify: "Although the ALJ identified one job with a GED reasoning level of 1—cleaner housekeeper—there is no finding by the Agency that the number of jobs available in this one occupation exist in significant numbers in the national economy given all of Plaintiff's other restrictions."  Br. at 33.  Plaintiff's first argument concludes at that point.  But it is not at all clear why Plaintiff believes there was no finding by the agency that housekeeper cleaner jobs were sufficiently numerous.  The VE plainly testified there were 221,000 such jobs.  AR 123.  This easily satisfies the statutory standard.  *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519 (9th Cir. 2014) (holding that 25,000 jobs is sufficiently numerous in the national economy).  Defendant observed as much in response, and Plaintiff filed no reply.

Out of an abundance of caution, in case Defendant and the Court are both missing something, the Court will address the merits of Plaintiff's argument concerning the ALJ's incorporation of Dr. Solomon's opinion.

Notably, the ALJ stated that she was "only somewhat" persuaded by Dr. Patterson's opinion on reconsideration that Plaintiff's mental health impairments were more severe, and she was "more

persuaded" by Dr. Solomon's opinion at the initial level.  This did not require the ALJ to incorporate

every portion of Dr. Solomon's opinion.  The RFC need not mirror any particular opinion, and the

ALJ's decision did not purport to do so.  *See* 20 C.F.R. §§ 404.1545(a)(3).  The justification for the

ALJ's deviations from Dr. Solomon's opinion (if any) was articulated in the ALJ's opinion:

> The undersigned is persuaded by Dr. Solomon's opinion because the doctor appeared to have considered not only the claimant's alleged mental health symptoms, but also a combination of her physical and mental health conditions with ongoing complaints of pain. The opinion is largely reflected in the claimant's residual functional capacity that limits her to simple non-tandem tasks, and also limits her interaction with the public. The undersigned notes that considering the subsequent evidence of record that shows minimal mental health treatment, the limitation regarding adaption is not adopted because the claimant is sufficiently adapting and managing her symptoms. Further, given the minimal treatment only limitations in interactions with the public appear warranted, as evident by her personal relationships, and she did not testify as to difficulty interacting with others in her last job.

AR. 75–76.

Although the ALJ must explain why pertinent evidence has been rejected, Plaintiff assumes

without explanation that the one to two step task limitation under the "understanding and memory"

subheading of Dr. Solomon's opinion was an *additional* limitation, and not subsumed within Dr.

Solomon's ultimate conclusion that she could perform simple tasks.  Other subheadings within Dr.

Solomon's mental RFC analysis also contained unique limitation language (such as the adaptation

section, which opined she was limited to "low demand" environments), but Dr. Solomon likewise

omitted those from his ultimate conclusion and Plaintiff identifies no error in that respect.  After

addressing each of the four areas of mental functioning under distinct subheadings, Dr. Solomon

concluded under "MRFC – additional explanation" that "the clmt is capable of simple, unskilled

tasks in a limited public setting. These findings complete the medical portion of the disability

determination."  AR 807.

Moreover, as to public interaction, there is no direct conflict between that concluding

statement concerning "limited public setting", and Dr. Solomon's earlier statement under the

"social interaction" subheading that Plaintiff was "*best suited* to work with minimal social demands and *no public contact*."   AR 807 (emphasis added).   Although the statements are somewhat in tension, there is a reasonable interpretation of the opinion that squares the two statements, namely: Dr. Solomon opined that, although Plaintiff would be "best suited" to jobs requiring no public contact, she could work in environments with limited public contact, as the ALJ stated in the RFC. That interpretation is consistent with the regulations which provide that the RFC represents "the most you can do despite your limitations;" it does not necessarily represent the work to which the individual is "best suited." 20 C.F.R. §§ 404.1545(a)(1).   In sum, there is no basis to simply elevate Dr. Solomon's statement that Plaintiff was best suited to work with no public contact above his subsequent statement that she was capable of working in a limited public setting.

Moving past the few sparse sentences the ALJ provided in explaining the weight she accorded to each individual opinion (reasoning Plaintiff discusses in isolation), of equal importance is the ALJ's affirmative reasoning for the limitations included.   Though not an RFC determination itself, the ALJ's step three finding contained relevant analysis of the four broad categories of mental functioning under the paragraph B criteria for evaluation of mental impairments and associated levels of limitation (ranging from mild to severe).

The ALJ found no more than a moderate limitation in any of the four areas.   In so concluding, the ALJ identified various pertinent reasoning including[5]: 1) she recalled and described her past work and medical history at the hearing and to examiners; 2)  cognitive functioning was noted grossly intact; 3) she was alert and oriented on exam; 4) she was able to seek medical care as needed for symptoms, articulate symptoms, and/or independently attend medical appointments; and 5) she fed and cared for her service dog. AR 66-67.  In the RFC section, the ALJ further explained

---

[5] Some of the reasoning was patently deficient, including that: 1) although she showers only 2 times a month she does clean herself (adaptation and self-management), 2) she was never fired due to social interaction problems; 3) she is able to live with her husband and go to stores (social interaction).  Nevertheless, the reasoning was on balance sufficient.

that: 1) her treatment was sporadic and conservative; and 2) mental status examinations were largely normal.  Plaintiff does not acknowledge or dispute this reasoning.

Plaintiff identified no error with respect to the ALJ's treatment of the opinion evidence, or the ALJ's RFC formulation as to her physical and mental functional capacity.

### B.    New Evidence Before Appeals Council

### 1.    Applicable Law

The Social Security Act grants district court's jurisdiction to review only final decisions of the Commissioner.  42 U.S.C. § 405(g); *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008).  An Appeals Council denial of a request for review is a non-final agency action not subject to judicial review because when review is denied, the ALJ's decision becomes the final decision of the Commissioner.  *Taylor v. Commissioner of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case.  20 C.F.R. § 416.1435(a).  The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

In limited circumstances, a claimant may submit new and material evidence to the Appeals Council that relates to the period on or before the ALJ's decision.  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5).  Evidence is material if it bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility" that the new evidence would have changed the outcome.  20 C.F.R. § 404.970; *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

2.      **Analysis**

Plaintiff contends the Appeal's Council erred with respect to N.P Schroeder's opinion submitted after the ALJ's decision, and that remand is required for consideration of same.  N.P. Schroeder identified numerous work preclusive limitations in many of the same respects identified by Dr. Ali, as discussed above, to wit: sit for 3 hours and stand for 2 hours in a workday; 15 minute position changes every hour; waist-level leg elevation 10 minutes twice daily; lift/carry up to 5 pounds; never perform right handed fine manipulations, grasping, turning, or twisting; occasionally perform such manipulations with the left hand; occasionally reach bilaterally; 15 minute unscheduled breaks every hour;  3 or more unexcused absences per month. AR 443-45.

Plaintiff correctly observes that the opinion is new in that it was not before the ALJ, and that it bears directly and substantially on the matter in dispute (her RFC).  Plaintiff ignores the final step of the analysis, namely whether there was a reasonable possibility that the new evidence would have changed the outcome.  Plaintiff suggests this requirement was somehow overridden by the regulations effective December 16, 2020 which she contends now only require a showing of good cause for late submission:

> After the decision in Taylor was issued, the Commissioner modified her Regulations on the Appeals Council considering new evidence only to require that a claimant also establish "good cause" for not informing the Agency about the evidence or submitting it earlier. 20 C.F.R. § 404.970(b). However, since the Agency never made a finding on good cause in the Appeals Council denial, this Court should not consider the issue. See e.g. Garcia v. Saul, No. 18-cv-2541-BAS-AGS, 2020 WL 4882499 *6 (S.D.Cal. Aug. 20, 2020). Regardless, Ms. Venedicto could not inform the Administration about the evidence earlier because it did not exist at the time the ALJ's decision was issued. See Held v. Colvin, 82 F.Supp.3d 1033, 1043-1044 (N.D.Cal. 2015) (collecting cases for holding that there is good cause for submitting evidence after the ALJ decision when the evidence did not exist earlier). See also Benveniste v. Astrue, No. CV 10-00133-MLG, 2010 WL 3582208 *3 (C.D.Cal. Sept. 9, 2010) (finding good cause for considering new and material evidence not before the ALJ when the evidence was not available and because, as here, the claimant was pro se at the time of the ALJ decision).

It is undoubtedly true that Plaintiff could not submit evidence that didn't exist at the time of the

ALJ's decision.  Yet Plaintiff misreads  20 C.F.R. § 404.970(b) which states "The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence."  Thus, good cause is a prerequisite for consideration under paragraph (a)(5), and the absence thereof is fatal to the claim.  It does not follow that the presence of good cause is sufficient for consideration under paragraph (a)(5) unless the requirements of paragraph (a)(5) are also satisfied.  Paragraph (a)(5), in turn, provides that "Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, *and there is a reasonable probability that the additional evidence would change the outcome of the decision*." (emphasis added).

Plaintiff ignores paragraph (b)'s cross reference to paragraph (a)(5) and its attendant requirement that there be a reasonable probability[6] the evidence would have changed the outcome. Plaintiff offers no discussion as to why N.P. Shroeder's opinion would have warranted adoption in any respect, a highly unlikely proposition considering N.P. Shroeder identified work preclusive limitations in largely the same respects identified by Dr. Ali, whose opinion the ALJ validly rejected, as explained above.  There was no reasonable probability (to use the language of the regulations) or possibility (to use the language of the Ninth Circuit) that N.P. Schroeder's opinion would have changed the outcome.

### C.   <u>Hypothetical to the VE</u>

#### 1.   <u>Applicable Law</u>

If the ALJ's hypothetical to the VE does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support the conclusion that the claimant can perform

---

[6] Though the regulations use the word "probability," the governing caselaw cited above uses the word "possibility" suggesting a less rigorous standard.

her past relevant work or other jobs existing in the national economy.  *See Alexander v. Saul*, 817 F. App'x 401, 404 (9th Cir. 2020).

## 2.    Analysis

Plaintiff contends the ALJ erred in not incorporating the limitations the ALJ herself identified in the hypothetical to the VE, chiefly the moderate limitation the ALJ identified with respect to social interaction and concentration, persistence and pace, which Plaintiff contends was not adequately accounted for in the hypothetical addressing only simple, non-tandem tasks with occasional interaction with the general public.  The occasional interaction with the public clearly address social interaction, as Plaintiff tacitly acknowledges noting such a limitation "ostensibly" accounts for social interaction limitations.

Concentration, persistence and pace was one of the four broad categories of mental functioning considered at steps two and three, and the ALJ's finding of moderate limitations in that functional area is a distinct inquiry from the RFC.  The ALJ considers those four broad categories of functional limitation during the special technique for evaluation of mental impairments set forth at 20 C.F.R. § 404.1520a(c)(3), also known as "paragraph B criteria," including: understanding, remembering and applying information; interacting with others; concentration, persistence and pace; and adapting and managing one's self.  The presence of more than mild findings in any area results in a severity finding at step two, and the presence of two marked or one extreme limitation in any area at step three indicates listing level mental disability.  As SSR 96-8p explains, however:

> the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8, 1996 WL 374184, at *1.  These "itemized" functions include: understanding, carrying

out, and remembering instructions; using judgment in making work-related decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting. *See id* at *6.

In the caselaw Plaintiff cites, the moderate limitations at issue were identified in medical opinions, not in the ALJ's own step three finding. *See, e.g.*, *Duckett v. Comm'r of Soc. Sec.*, No. 2:15-CV-0976-CMK, 2016 WL 5468711, at *2 (E.D. Cal. Sept. 29, 2016) (noting that the psychiatric consultative examiner assessed Plaintiff with moderate concentration limitations, limitations not adequately accounted for by an RFC restriction to simple and repetitive tasks).

Treating doctors and consultative examiners who complete medical opinions often assess functional limitations couched in the same terminology as the "four broad categories" under the paragraph B criteria the ALJ considers in performing the special technique at steps two and three, rather than couched in terms of the related but distinct itemized functions considered at the RFC stage. This confounds the analysis somewhat, but is arguably not a meaningful distinction. The caselaw requiring an ALJ to make a reasonable effort to "translate" moderate limitations into concrete RFC work restrictions should theoretically apply with equal force irrespective of whether those moderate limitations are identified in medical opinions, or are identified by the ALJ herself at steps two and three. If a work restriction in the RFC to simple and routine task is not an adequate translation of moderate concentration, persistence and pace limitations, that should theoretically be true regardless of who identifies such limitations or where.

Nevertheless, the Court will not remand on that basis alone for three independent reasons. First, the cited caselaw is not controlling. *See, e.g.*, *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009). Second, the holding in *Brink* is somewhat in tension with precedent that is controlling, namely *Stubbs Danielson*, and the grounds articulated by the *Brink* panel for distinguishing *Stubbs Danielson* do not plainly apply here:

In Stubbs–Danielson, we held that an "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony." Id. at 1174. The medical testimony in Stubbs–Danielson, however, did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. Stubbs–Danielson, therefore, is inapposite.

Brink at 212 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008)).

As explained above, the moderate limitation at issue here as to concentration, persistence and pace was identified by the ALJ herself at step three, it was not derived from medical testimony or opinion evidence. Even assuming the ALJ was intending to give effect to state agency reviewer Dr. Solomon's moderate limitations as to concentration/persistence/pace, the language he used in describing such limitations precludes application of the *Brink* panel's holding that such limitations are not accounted for by a restriction to simple and routine tasks. Indeed, Dr. Solomon explicitly opined that "the clmt can maintain concentration, pace and persistence *for simple tasks*." AR 806 (emphasis added). In other words, her concentration, pace and persistence deficits would only be an obstacle to the extent she was required to perform more than simple tasks.

Finally, there is no guidance from any controlling case law, social security ruling, or regulation as to how specifically an ALJ ought to concretely translate moderate concentration, persistence and pace limitations into the RFC other than via a limitation to simple and routine tasks.[7]  At bottom, this was what the Ninth Circuit appeared to recognize in *Stubbs-Danielson*, and there are no grounds for distinguishing it here.  *See Stubbs–Danielson*, 539 F.3d at 1174 (holding that the ALJ adequately translated  "pace and the other mental limitations regarding attention, concentration, and adaption" into "the only concrete restrictions available to him," namely a limitation to simple tasks).

---

[7] Compare, for example, social interaction limitations, readily accounted for by specifying the degree of interaction the claimant can have with supervisors, co-workers and the general public.

### D.   Plaintiff's Testimony

#### 1.   Applicable Law

The ALJ is responsible for determining credibility,[8] resolving conflicts in medical testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the

---

[8] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

### 2. <u>Analysis</u>

The ALJ found Plaintiff's impairments could reasonably be expected to cause some degree of symptoms and found no malingering.  AR 70.  Thus, she was required to identify clear and convincing reasons for rejecting Plaintiff's testimony.  The ALJ rejected Plaintiff's testimony based on her conservative treatment, objective medical evidence including mild diagnostic and examination findings, and her activities of daily living.  AR 70-77.

First, as discussed above, Plaintiff disputes the ALJ's reliance on her conservative treatment in support of the RFC generally and in support of her rejection of Dr. Ali's opinion.  Plaintiff contends her earlier argument applies with even more force to the ALJ's improper rejection of her symptoms.  For the same reasons discussed above, the Court disagrees, particularly considering Plaintiff identifies no specific testimony warranting adoption.  Nor does she explain how accepting her testimony would require the inclusion of RFC restrictions greater than the ALJ included.  This is not a case where the ALJ dismissed the matter at step two, or casually dispensed with the RFC analysis.  Rather, the ALJ identified many severe impairments and rendered a detailed RFC supported by 10 pages of analysis.

Inherent in every disability application is the underlying contention that the Plaintiff is too impaired too work.  That is too vague a proposition to be susceptible to specific refutation, as is the case with generalized testimony that daily tasks are painful and cumbersome.[9]  To the extent Plaintiff offered specific pieces of testimony not adequately incorporated into the RFC, not adequately addressed by the ALJ, and not subsumed in the ALJ's analysis of the opinion evidence

---

[9] As compared to, say, a testimonial statement that the Plaintiff cannot lift more than a gallon of milk.

discussed above, the impetus was on Plaintiff to identify as much in her fourth and final argument. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

Plaintiff also disputes the ALJ's reliance on the objective evidence, noting that it is not a standalone basis for rejecting symptom testimony. Notwithsanding, it is still a relevant basis to consider (perhaps the most relevant), though it can be tedious and time consuming. Plaintiff cannot excuse herself from participating in that task by observing in passing that objective evidence is an insufficient standalone basis to reject symptom testimony. Plaintiff's 20-page recitation of the medical evidence in her statement of facts was quite thorough, but offers no argumentation. Little to no representative samples thereof made their way into the argument section.

By contrast, the ALJ discussed and pin-cited numerous objective records in support of the RFC, including: benign MSEs reflecting full orientation, normal mood, memory, affect, speech, condition, and memory; normal muscle strength, bulk, tone, coordination, reflexes, gait, and negative straight leg raises; mild carpal tunnel on EMG/NCV studies, largely mild imaging findings of her hands, knees, lumbar and cervical spine, save for mild to moderate cervical canal stenosis and mild to severe cervical foraminal stenosis at some levels. AR 70-77, citing AR 1079-99, 1155-93, 1291, 1493, 1534, 1563, 1571, 1632, 1632-33, 1646). Substantiating Plaintiff's claim of error would require some interaction with the ALJ's citations on these subjects, along with some explanation as to why they are either inaccurate, incomplete, or not representative of the record as a whole.

Finally, Plaintiff disputes the ALJ's reliance on her activities of daily living including: performing minimal cooking and cleaning, wanting to return to school, driving when necessary; feeding her dogs and giving them water; warming food in the microwave; and going shopping with

her husband at times (Id.).  AR 109–12, 171–72; 188.  The list of daily activities was certainly modest.  On balance however, although the cited activities may not have affirmatively established Plaintiff could return to gainful employment, they do suggest she is not as impaired as alleged.  *See Valentine v. Commissioner Social Sec. Admin.,* 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . .  evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

In sum, the ALJ articulated clear and convincing reasons for rejecting Plaintiff's testimony, including conservative course of treatment, diagnostic and examination findings, and her activities of daily living.

**VI.    Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Norma Luz Venedicto.

IT IS SO ORDERED.

Dated:   **September 28, 2022**           **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE